THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VERONICA L. KEITH,

    Plaintiff,

v.

CUNA MUTUAL INSURANCE AGENCY, INC.,

    Defendant.

NO. 08-01368 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 17, 35). Neither party requested oral argument on either motion, and the court finds the motions suitable for resolution on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS IN PART and DENIES IN PART Defendant's motion (Dkt. # 17) and DENIES Plaintiff's motion (Dkt. # 35).

## II. BACKGROUND

In July 2004, Scott Keith was fatally shot by Donald Roy Skewis during a confrontation about an ongoing property dispute. Mr. Keith was covered under an accidental death and dismemberment policy ("the Policy") issued by Defendant

ORDER - 1

CUNA Mutual Insurance Society ("CUNA"), an Iowa corporation. The Policy provides benefits in the event of the insured's accidental death, but excludes benefits for accidental death caused by, or resulting from, "committing or attempting to commit a felony." Long Decl. (Dkt. # 18), Ex. A. The Policy has a section titled "How to File a Claim," which also contains limitations provision:

> You must write Us about a claim within 20 days after the occurrence of any Loss or as soon as You can. We will provide you with claim forms or We will send them to you within 15 days after You tell Us about the claim. If We don't send the forms in 15 days, You can simply send Us written proof of loss. The proof must show the date, the character and extent of the Loss.
>
> You must send proof to Us within 90 days after the date of such Loss. If You cannot send proof to Us within 90 days, You must do so as soon as You can. Unless you have been legally incapable of filing the proof of loss, We won't accept it if it is filed after one year from the time it should have been filed. **You can't start any legal action against Us until 60 days after You send Us proof of loss and You can't start any legal action against Us more than three years (six years for South Carolina residents) after You have sent the proof.**

*Id*. (emphasis added). The Policy defines "Loss" as an "injury that results in Loss of life . . . of an Insured Person and occurs while the Policy is in force." *Id*.

Plaintiff Veronica Keith, Mr. Keith's wife, was the Policy's beneficiary. Ms. Keith submitted proof of loss on November 1, 2004. CUNA denied the claim on December 9, 2004, after the Thurston County Sheriff's Office represented that Mr. Keith had threatened Mr. Skewis with a baseball bat, and was thus attempting to commit a felony. CUNA's denial letter included the following language: "CUNA Mutual Group reserves the right to rely on and assert any and all policy defenses which are or may become applicable to your claim. If you should have any questions

ORDER - 2

concerning this claim or feel that we have been given incorrect information, please contact me[.]" Long Decl., Ex. C.

On June 30, 2006, Ms. Keith filed a wrongful death lawsuit against Mr. Skewis. She sent a letter to CUNA on August 31, 2006, requesting a review of her claim in light of new evidence she had obtained for purposes of the wrongful death lawsuit. CUNA reaffirmed its denial of Ms. Keith's claim on October 16, 2006, stating that the prosecutor's office had informed CUNA that the homicide was justifiable. The denial letter reiterated:

> CUNA Mutual Group reserves the right to rely on and assert any and all policy defenses which are or may become applicable to your claim. We regret this action is necessary. If you feel our decision is based on incomplete or incorrect information, we will be happy to review any additional information you would like to provide.

Long Decl., Ex. E.

On May 8, 2007, Ms. Keith's attorney wrote to CUNA to request reconsideration of the claim, contending that CUNA's reliance on the prosecutor's decision not to prosecute was unreasonable because prosecutors consider factors like budget concerns and likelihood of conviction when deciding whether to prosecute, which is not necessarily related to whether Mr. Keith was attempting to commit a felony when he was killed. *See* Long Decl., Ex. F.

CUNA responded on June 20, 2007, reaffirming its denial of Ms. Keith's claim and contending that its denial was based on the representations that Mr. Keith was attempting to commit a felony when he was shot. Based on that information, CUNA reaffirmed its position that Ms. Keith's loss was not covered by the Policy. And again, the denial letter included the following language:

> CUNA Mutual Group reserves the right to rely on and assert any and all policy defenses which are or may become applicable to your claim. We

ORDER - 3

> regret this action is necessary. If you feel our decision is based on
> incomplete or incorrect information, we will be happy to review any
> additional information you would like to provide.

Long Decl., Ex. G.

On June 16, 2008, Ms. Keith sent a letter to notify CUNA of her claim under Washington's Insurance Fair Conduct Act ("IFCA") for denial of coverage. *See* Beck Decl. (Dkt. # 36), Ex. E at 46. The letter indicated that, pursuant to IFCA, CUNA had twenty days to resolve the claim. CUNA never responded to this notice.

On July 15, 2008, a jury found Mr. Skewis liable for the killing of Mr. Keith. Ms. Keith filed this lawsuit on August 28, 2008, bringing claims for breach of contract, bad faith, violation of the Washington Consumer Protection Act ("CPA"), and violation of the Washington Insurance Fair Conduct Act ("IFCA"). CUNA has moved for summary judgment against all of Ms. Keith's claims as time-barred. Ms. Keith has cross-moved for partial summary judgment, requesting that the court find CUNA liable on all of her claims.

### III. ANALYSIS

**A. Standard of Review on Summary Judgment.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B. The Policy's Limitation Provision is Enforceable and Ms. Keith's Contract Claim is Time-Barred.[1]**

CUNA argues that Ms. Keith's lawsuit is time-barred under the Policy's limitations provision because the suit was filed more than three years after Ms. Keith submitted her proof of her husband's death. Ms. Keith presents alternative arguments: (1) if the limitations provision is enforceable, the Ms. Keith's suit is nonetheless not time-barred because she filed within three years of the last date on which she sent information to CUNA; or (2) the limitations provision is not enforceable due to either CUNA's conduct or Washington statute. The court will address each of Ms. Keith's alternative arguments in turn.

**1. The Plain Language of the Limitations Provision Indicates That the Triggering Event is Filing the Proof of Loss.**

CUNA contends that the three-year period referenced in the limitations provision runs from the date the insured files the proof of loss. Ms. Keith contends that the three-year period begins to run on the last date on which an insured submits evidence.

The interpretation of an insurance contract is a matter of law. *Greene v. Young*, 113 Wn. App. 746, 752 (2002). An undefined term used in an insurance contract is given its "plain, ordinary, and popular" meaning. *Id*. (quoting *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 170 (1994) (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877 (1990))). A court should "consider the policy as a whole, and [] give it a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Quadrant Corp. v. Am. States Ins. Co.*, 154

---

[1] CUNA administers its policies in Iowa. The parties agree that there is no conflict of law (between Washington and Iowa law) as to the issues in CUNA's motion, and that the court should apply Washington law to resolve those issues. *See* Def.'s Mot. (Dkt. # 17) at 6, Pltf.'s Resp. (Dkt. # 37) at 7.

ORDER - 5

Wn.2d 165, 171 (2005) (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666 (2000)).

The parties' dispute centers on one sentence of the limitations provision: "You can't start any legal action against Us until 60 days after You send Us proof of loss and You can't start any legal action against Us more than three years (six years for South Carolina residents) after You have sent the proof." According to Ms. Keith, the reference at the end of the sentence to "the proof" is a general term referring to any type of proof or evidence. CUNA contends that "the proof" refers to the sentence's previous reference to "proof," in the context of "proof of loss."

The court agrees with CUNA's interpretation. In the context of this sentence, "the proof" is a shorter reference back to the earlier "proof of loss," because the sentence intends to define specific periods after a fixed point in time. It does not contemplate multiple submissions of proof; if it did, consistent with Ms. Keith's interpretation, it would read something like " . . . You can't start any legal action against Us more than three years . . . after the last date on which You have sent proof." Instead, the sentence first refers to a 60-day period after sending the proof of loss, and then another three-year period after sending "the proof." Based on the structure of this sentence, the only fair, reasonable, and sensible interpretation is that "the proof" is a reference to the earlier "proof of loss."

Ms. Keith attempts to inject ambiguity into the sentence's meaning via the deposition testimony of former CUNA insurance adjuster Sue Allen. Ms. Allen wrote in Ms. Keith's CUNA file that her date of "proof" was September 5, 2006 (the date CUNA received Ms. Keith's August 31, 2006 letter providing new information), and testified that "proof" means evidence generally but "proof of loss" means proof of death. *See* Beck Decl. (Dkt. # 36), Ex. B at 33-34. According to Ms. Allen, "proof of

loss" is defined for purposes of the Policy, but CUNA internal documents also use the term "proof date" to refer to the last date that any evidence was received.

The CUNA internal documents and Ms. Allen's testimony are consistent with the court's interpretation of the policy language: the "proof date" listed on CUNA documents is not the same as the "proof of loss" date mentioned in the limitations provision. Thus, the limitations provision is unambiguous: the submission of the proof of loss is the event which triggers the beginning of the three-year period. Because Ms. Keith's contract claim was filed more than three years after CUNA received the proof of loss, her contract claim is time-barred.

### 2. Neither Waiver nor Estoppel Applies Here.

According to Ms. Keith, waiver or estoppel should prevent CUNA from enforcing the limitations period against her because its denial letters encouraged Ms. Keith to continue submitting information rather than filing a lawsuit. *See Staats v. Pioneer Ins. Ass'n*, 55 Wn. 51, 53-57 (1909) (finding that insurance company had waived a limitations defense because its agent told the plaintiff that he would not take any action on the claim until third parties took action, by which time the limitations period had expired); *Logan v. North-West Ins. Co.*, 45 Wn. App. 95, 100 (1986) (holding that an insurer is estopped from asserting a policy limitation if the "insurer's agreement, declaration, or course of action leads the insured to conduct based on that insured's honest belief that forfeiture of his policy will not occur.").

There is no evidence that CUNA induced, misled, or encouraged Ms. Keith not to file a lawsuit. CUNA sent an initial denial of coverage letter dated December 9, 2002, and each successive letter with Ms. Keith reaffirmed that initial denial of coverage. Each successive letter also stated that CUNA reserved the right to rely on all policy defenses. Though the letters stated that CUNA would review additional information, they did not suggest that CUNA's coverage decision was not final or

ORDER - 7

otherwise discourage filing a lawsuit.  Thus, the evidence does not support Ms. Keith's argument for waiver or estoppel.

### 3. RCW 48.18.200 Does Not Invalidate the Limitations Provision, and Even if it Did, Ms. Keith's Contract Claim is Still Time-Barred.

Ms. Keith contends that the limitations provision is void because it violates RCW 48.18.200, which provides, in relevant part:

> (1) No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement . . . (c) limiting right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all insurances other than property and marine and transportation insurances. In contracts of property insurance, or of marine and transportation insurance, such limitation shall not be to a period of less than one year from the date of the loss.
>
> (2) Any such condition, stipulation, or agreement in violation of this section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

According to Ms. Keith, the limitations provision violates this statute because of the triggering event. Ms. Keith argues that the clause is unenforceable because the three-year period is triggered by the filing of the proof of loss, and not the accrual of a cause of action as contemplated by RCW 48.18.200.

Ms. Keith has not explained how this distinction makes a difference in this case, and has not cited any authority regarding this argument. The court knows of no authority requiring that a limitations provision be triggered by the accrual of a cause of action. In fact, other courts have enforced limitations provisions with similar triggering events. *See*, *e.g.*, *Simms v. Allstate Ins. Co.*, 27 Wn. App. 872, 878 (1980) (limitation period began to run on date of loss); *Schaeffer v. Farmers Ins. Exchange*, 2002 WL 662889 (Wash. App. Div. 1 April 22, 2002) (same).

ORDER - 8

Furthermore, even if the limitations provision was invalidated by RCW 48.18.200, the statute would provide that Ms. Keith has one year to file a lawsuit from the time the cause of action accrues. Ms. Keith's contract claim alleges that CUNA breached the insurance policy by failing to provide coverage for her claim, and it is well-established Washington law that a claim for breach of contract accrues upon breach. *See Schwindt v. Commonwealth Ins. Co.*, 140 Wn.2d 348, 353 (2000); *Safeco Ins. Co. v. Barcom*, 112 Wn.2d 575, 583 (1989); *Taylor v. Puget Sound Power & Light Co.*, 64 Wn.2d 534, 537-38 (1964). Thus, Ms. Keith's cause of action for breach of contract accrued on December 9, 2004, when CUNA denied coverage. If RCW 48.18.200 applied, then Ms. Keith's contract claim is still time-barred, because she filed after December 9, 2005.

**4. The Limitations Provision Does Not Apply to Ms. Keith's Other Claims.**

The limitations provision states that it limits "any legal action" filed by the insured against the insurer. Thus, according to CUNA, the limitations provision bars all of Ms. Keith's claims, not just the contract claim. But Ms. Keith contends that because the provision does not expressly apply to all claims, it should not bar her non-contract claims.

As CUNA admits, no Washington court has construed a limitations provision as broad as the one here. The more typical limitations provision includes language referencing claims on or related to the policy. *See*, *e.g.*, *Schwindt*, 140 Wn.2d at 355-56 (limitations provision refers to claims "on this policy for the recovery of any claim"); *Simms*, 27 Wn. App. at 878 (1980) (same); *Schaeffer*, 2002 WL 662889 (limitations provision refers to "[s]uit on or arising out of this policy"); *1515-1519 Lakeview Blvd. Condo. Ass'n v. State Farm Fire & Cas. Co.*, 2001 WL 244383 (Wash. App. Div. 1 March 12, 2001) (limitations provision refers to "legal action against us

ORDER - 9

under this insurance"). In each of those cases, the court held that the limitations provision did not bar tort or statutory claims, but applied only to claims on the policy.

The *Lakeview Blvd.* analysis is particularly instructive here, because the language is arguably the broadest and therefore most similar to the limitations provision before this court. In that case, the insured raised claims against the insurer (1) on the contract, (2) under Washington's Consumer Protection Act ("CPA"), and (3) for unfair trade practices. The limitations provision in the insurance contract applied to "legal action against us under this insurance," and the insurer contended that the provision applied to all of the insurer's claims because none of them would exist without the insurance policy.

Though the court agreed with the insurer as to the claim for coverage under the contract, the court rejected the insurer's arguments as to the other claims:

> Here, the suit limitation clause bars actions "under this insurance" unless brought within two years after the date of loss. Like the one-year limit for claims "on the policy" in *Simms*, the clause here should not bar actions arising under an independent statutory scheme such as the Consumer Protection Act. To do so would frustrate the independent duty of good faith and fair dealing that arises from the Act.

*Lakeview Blvd.*, 2001 WL 244383 *4. The *Schaeffer* court applied similar reasoning when construing a provision limiting claims "on or arising out of this policy": "The insurer's duty of good faith and fair dealing arises not just from the contract, but from an independent source. . . . The insurer should not be able to avoid the policy behind the CPA by inserting the one year limitations period authorized by RCW 48.18.200(1)(c)." 2002 WL 662889 *4. Both of these courts focused on the source of the obligation that underlies the legal action: an insurance contract should be able to limit a claim for breach of a contractual obligation, but not a claim based on duties imposed by other sources.

ORDER - 10

The court agrees with this reasoning. Though the limitations provision language here is arguably broader than in *Lakeview Blvd.* or *Schaeffer*, both of those courts' holdings were not limited by the contractual language, but focused on the independent nature of the duties or statutes that had been allegedly breached or violated. Applying the Policy's contractual limitations provision to all of Ms. Keith's claims would allow CUNA to avoid its extra-contractual duties or to frustrate the purpose of statutory schemes. For this reason, the court holds that the limitations provision does not apply to Ms. Keith's non-contractual claims.

**C.   Ms. Keith's IFCA Claim Fails Because IFCA Does Not Apply Retroactively.**

In November 2007, Washington voters passed Referendum 67, popularly known as IFCA. The act took effect on December 6, 2007, and was codified as RCW 48.30.015. IFCA creates a private cause of action to a first-party claimant who has been unreasonably denied insurance coverage, and also provides for treble damages and an attorney fee award. *See* RCW 48.30.015(1)-(3). IFCA requires that a first-party claimant "must provide written notice of the basis for the cause of action to the insurer and the office of the insurance commissioner" twenty days prior to filing an IFCA action. RCW 48.30.015(8)(a).

Ms. Keith does not dispute the effective date of IFCA or that the act does not apply retroactively. Instead, she claims that IFCA applies to this case because CUNA continued to deny coverage after IFCA's effective date. The court disagrees.

The last date on which CUNA wrote to Ms. Keith to deny her coverage was June 20, 2007, before IFCA was enacted. An IFCA claim is based on an unreasonable denial of coverage. *See* RCW 48.30.015(1) ("Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action . . . "). Denial of coverage is the predicate event for an

ORDER - 11

IFCA claim. But here, CUNA last affirmatively denied coverage in June 2007, months before IFCA went into effect.[2] Thus, Ms. Keith's IFCA claim must fail.

**D. Issues of Fact Preclude Summary Judgment on Ms. Keith's Remaining Claims.[3]**

The only claims remaining at this point are Ms. Keith's claims for bad faith and violation of the CPA. Ms. Keith has moved for summary judgment as to liability on those claims, arguing that CUNA's denial of coverage and investigation of her claim was unreasonable and in bad faith because CUNA relied on representations from law enforcement officials to apply the felony exclusion and did not adequately consider or investigate the evidence she submitted.

CUNA contends that it was reasonable to consider the decisions of law enforcement officials, and that its evaluation of Ms. Keith's evidence was sufficient, given its determination that her evidence was not probative as to whether Mr. Keith had committed a felony before he was killed. According to CUNA, there is at least an issue of fact as to the reasonableness of its conduct, such that summary judgment is precluded.

Bad faith is a tort with four elements: (1) the defendant had a duty of good faith; (2) the defendant breached the duty; and (3) the breach is the proximate cause of (4) damages. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003). A bad-faith denial of insurance coverage may also give rise to a claim under Washington's Consumer Protection Act ("CPA"), RCW Ch. 19.86. *See Transcontinental Ins. Co. v.*

---

[2] The June 2008 demand is not a predicate event for an IFCA claim because it does not contain any different information or evidence than what had been submitted to CUNA in the past. Thus, the last denial of coverage based on a renewed request occurred in June 2007, before IFCA was enacted.

[3] Ms. Keith submitted a declaration to support her reply brief on her motion for partial summary judgment. *See* Stempel Decl. (Dkt. # 43). CUNA moved to strike the declaration, on the grounds that it was inappropriate to submit new evidence with a reply brief, and that the statements in the declaration lack foundation, are immaterial, and rely on facts not in evidence. *See* Def.'s Surreply (Dkt. # 45). The court did not consider the Stempel declaration in ruling on the pending motions, and thus the motion to strike is DENIED as moot.

ORDER - 12

*Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 470-71 (1988). But, if an insurer denies coverage based on a reasonable interpretation of a policy and its conduct is reasonable, then the denial is not in bad faith and the insurer does not violate the CPA. *See Transcontinental*, 111 Wn.2d at 470. The *Smith* court discussed the reasonableness inquiry in a summary judgment context:

> Whether an insurer acted in bad faith remains a question of fact . . . . If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably. The policyholder has the burden of proof. The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate.

*Smith*, 150 Wn.2d at 485-86 (citations omitted).

In this case, the evidence submitted by both parties allows reasonable minds to differ as to whether CUNA's conduct was reasonable. Ms. Keith contends it was unreasonable for CUNA to rely on statements from law enforcement rather than conduct its own independent investigation, but has cited no authority requiring an insurer to perform an independent investigation. In fact, Ms. Keith submitted deposition testimony from a CUNA employee who testified as the Fed. R. Civ. P. 30(b)(6) representative of CUNA, stating that CUNA often relies on statements from law enforcement. *See* Beck Decl. (Dkt. # 36), Ex. C at 77:17-21 ("[CUNA] rel[ies] very heavily on [authorities in the jurisdiction] to perform the investigation. They're in the locale. They have greater training than myself and my staff and are typically more thorough with respect to all the elements of their investigation.") That same employee testified that CUNA typically hires a third-party investigator to investigate

foreign claims in locations where CUNA has discovered that the local authorities do not conduct a thorough investigation. *See* Beck Decl., Ex. C at 78:15-79:15. Ms. Keith's submissions did not conclusively establish that the felony exception did not apply, but they may have warranted further investigation on CUNA's part. Under these circumstances, it is not clear that CUNA's conduct was unreasonable or in bad faith. Because reasonable minds could differ on those issues, summary judgment is precluded.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' motion (Dkt. # 17) and DENIES Plaintiff's motion (Dkt. # 35).

IT IS SO ORDERED.

DATED this 23rd day of June, 2009.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 14